1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

```
-------------------------------X
UNITED STATES OF AMERICA,      :  CR-12-11

     -against-                 :  United States Courthouse
                                  Central Islip, New York
RAKESH K. PUNN,                :
                                  July 17, 2013
          Defendant.          :  3:00 p.m.
-------------------------------X
```

TRANSCRIPT OF ORAL ARGUMENT
BEFORE THE HONORABLE JOANNA SEYBERT
UNITED STATES DISTRICT COURT JUDGE


APPEARANCES:

For the Government:          LORETTA E. LYNCH, ESQ.
                             UNITED STATES ATTORNEY
                             610 Federal Plaza
                             Central Islip, New York 11722
                             BY:  ALLEN BODE, ESQ.


For the Defendant:           ELIZABETH E. MACEDONIO, ESQ.
                             42-40 Bell Boulevard, Suite 302
                             Bayside, New York 11361
                                      and
                             MICHAEL K. BACHRACH, ESQ
                             276 Fifth Avenue, Suite 501
                             New York, New York 10001


For Sippy & Jesse Punn

                             Arnold J. Levine, Esq.
                             233 Broadway, Suite 901
                             New York, New York 10279


Official Court Reporter:     Ellen S. Combs, CSR
                             100 Federal Plaza - Suite 1180
                             Central Islip, New York 11722
                             Phone (631) 712-6107
                             Fax (631) 712-6123


Proceedings recorded by mechanical stenography
Transcript produced by Computer

2

1          (The following took place at 3:07 p.m.)

2          THE CLERK:  For oral argument, US vs Rakesh

3     Punn.

4          Please identify yourselves.  First for the

5     government.

6          MR. BODE:  Allen Bode for the government, your

7     Honor.  Good afternoon.

8          THE COURT:  Good afternoon.

9          MR. LEVINE:  Arnold Levine for Jesse, Sippy

10    Punn.

11         THE COURT:  Arnold Levine is it?

12         MR. LEVINE:  Yes.

13         THE COURT:  Obviously we have a court reporter

14    here, so if you would just identify yourselves when you're

15    speaking because I understand that counsel for defendant

16    is also on the line.

17         MR. BACHRACH:  Yes, your Honor.  Michael

18    Bachrach and Elizabeth Macedonio for the defendant.

19         MS. MACEDONIO:  Good afternoon your Honor.

20         THE COURT:  Good afternoon.

21         I assume that Ms. Macedonio and Mr. Bachrach

22    have received copies of the Court's order which was

23    entered yesterday, denying the motion to quash.

24         In addition, Mr. Levine, I just have one

25    inquiry.

3

1          When were you retained?

2          MR. LEVINE:  I was retained, I think it was

3    around -- it was late May.  I think it was just a few days

4    before May 29th when I met with Mr. Bode.

5          THE COURT:  So you were retained sometime around

6    May 26th, something like that?

7          MR. LEVINE:  Yes, around there.  I can find the

8    exact date for you.

9          THE COURT:  All right.  And you were going to

10   join in the motion at some point in time.  The Court

11   rendered its decision denying the relief that defendant

12   Punn asked for, correct?

13         MR. LEVINE:  Yes, judge.

14         I hadn't joined in earlier for a couple of

15   reasons.  One is, I met with Mr. Bode and we were

16   discussing, we had a discussion regarding the Fifth

17   Amendment issue that seems to be going a long way towards

18   obviating the -- issue.

19         And I really wasn't sure that I had standing on

20   the abuse of process grounds.

21         THE COURT:  Right.

22         MR. LEVINE:  But, and I'm not sure if your

23   decision, to tell you the truth, whether you thought that

24   I didn't have standing on those grounds or only on

25   privilege grounds.

4

1          Mr. Bode has advised me that he received your

2     orders granting immunity.  And I hadn't received it yet.

3     And he told me I would receive them tomorrow morning

4     before my client has to testify.  And so -- whether they

5     provided all of the information to which I'm entitled.

6     And so I would, I want to join their motion to the extent

7     that I legally can.

8          THE COURT:  Well, I don't think you have

9     standing either.  And I understand that there is now a

10    motion for reconsideration by the defendant Punn.  And he

11    certainly doesn't have standing.  So I don't know how much

12    a motion to reconsider will accomplish other than delay

13    the investigation of the Grand Jury.

14          In terms of the merit, forgetting the standing

15    for the moment, your request for interlocutory appeal; my

16    understanding is that it's only recognized with regard to

17    pretrial orders such as I have, that they're only

18    immediately appealable in criminal cases under the

19    Collateral Order Doctrine.  In other words, orders

20    granting or denying bail, denials of motion to dismiss the

21    indictment pursuant to the double jeopardy clause, denial

22    of a motion to dismiss the indictment pursuant to the

23    Speech and Debate Clause, and orders requiring the

24    defendant to be involuntarily medicated so as to become

25    competent to stand trial.  None of those situations exist

1  here, clearly on behalf of the Punn children that I have

2  been able to discern.

3          So if you have anything to add to that, other

4  than you want copies of their statements, I'll hear your

5  arguments on that, and then I'll deal with the copies of

6  the statements, the DE 5 later.  So to make it perfectly

7  clear, you don't have an immediate right to appeal the

8  Court's denial on the motion to quash.

9          MR. BACHRACH:  Your Honor, may I also comment on

10  the -

11          THE COURT:  Why don't you let Mr. Levine finish

12  his presentation to the Court, and then I'll hear what you

13  have to say, Mr. Bachrach.

14          MR. BACHRACH:  Thank you.

15          MR. LEVINE:  Well your Honor, I have read your

16  decision, perhaps wrongly, to say that -- it's divided

17  into two parts, basically, two reasons you're denying the

18  motion to quash.  One was that the defendant did not have

19  standing to assert my clients' constitutional rights, with

20  which I agree.  And the other part was, you seem to --

21  which was that it is a process to be an abuse of process

22  because you agree, Mr. Bode agrees that --

23          THE COURT:  Right.

24          MR. LEVINE:  I didn't think that you were saying

25  that the defendant didn't have standing to move to quash

6

1    on the abuse of process issue.  Is that --

2           THE COURT:  Yes.  That is essentially what I'm

3    saying.  I agreed with both of Mr. Bode's arguments.

4           One, there is no standing for the defendant

5    Punn, who you're not representing, to move to quash.

6           Two, that the government has certainly

7    sufficiently answered any claim that the Grand Jury

8    investigation is being convened for an improper purpose.

9           So now you have your motion that you made

10   sometime this morning, which essentially -- sometime late

11   last night.  When did you file it?

12          MR. LEVINE:  I filed it, I emailed it out around

13   10:30 last night.

14          THE COURT:  So you have your motion now, and

15   your asking for a decision on it.  Mr. Bode has not

16   responded.  But I really don't see where you have standing

17   at this point in that you have orders of immunity that

18   have been granted to your client.

19          Mr. Bode, can you respond?

20          MR. BODE:  And yes, just regarding the order of

21   immunity, your Honor.  As the Court may or may not be

22   aware because this is a fairly rare procedure here in

23   federal court -- I have never done it before myself -- The

24   immunity orders, basically the government has to get

25   permission from the Department of Justice which took a

7

1    number of weeks in this case.  Mr. Levine indicated the

2    defense, or that Sippy Punn and Jesse Punn would not

3    testify without immunity.  And it then goes to the

4    District Court.  We filed and got a miscellaneous number.

5    We went to Judge Spatt.  We have an order.

6            But until the Grand Jury happens and the right

7    is invoked the order is not in effect.  But I told

8    Mr. Levine, you know rather than have them invoke and

9    then, and then step out and show it to them, I'll show it

10   to them in advance.  But I can't give them a copy because

11   it's not in effect until that happens.

12           THE COURT:  I don't think you're arguing that

13   point.  Are you, Mr. Levine?

14           MR. LEVINE:  No.  After I received that email I

15   changed my motion to redact, to take that part out.

16           THE COURT:  Great.

17           MR. LEVINE:  Of course, since I haven't seen it

18   yet, I don't know whether there will be issues or anything

19   to do with the order tomorrow morning.  It's possible that

20   I'll look at it and say I don't think this gives all 6002

21   protection.  But if I think that it does, then that's,

22   that --

23           THE COURT:  So your main issue is then,

24   according to your motion, the appealability of the court's

25   denial of your motion to quash.

8

1      MR. LEVINE:  Right.  There is not only my motion

2 to quash.  But given Mr. Punn's motion to quash, that is

3 the defendant Mr. Punn, that if he's seeking an

4 interlocutory appeal, and seeking a stay, then I would ask

5 that my clients not have to testify until that issue is

6 decided.

7      THE COURT:  Well, let's handle your clients in

8 terms of whether or not you have a right on behalf of your

9 clients to seek an immediate appeal.  And I think I have

10 just rendered a decision on that, that you do not have

11 that right.

12      MR. LEVINE:  Right.

13      THE COURT:  Now, let me ask Mr. Bode to deal

14 first with your motion.  And then I'll hear defendant

15 Punn's motion with regard to a motion to reconsider my

16 denial of the motion to quash.

17      MR. BODE:  I'll be fairly brief, your Honor.

18 Obviously the courts agree with what the Court has held

19 thus. And far be it for me to argue myself out of what I

20 already have.

21      But just in terms of the specific grounds that

22 Mr. Levine cites on pages 3 to 4 of his motion.  One is

23 regarding the statements which I'll deal with in a moment.

24      And then two is the, basically wanting to join

25 in the defendant's motion to quash which has already been

9

1    denied by the court.  So I won't argue regarding the

2    second part.  We just won't deal with that.  I think when

3    Mr. Bachrach speaks --

4            THE COURT:  So just tell me what you want to

5    deal with on page 3.

6            MR. BODE:  Just on, I would just note, your

7    Honor -- I'm sorry -- the government had -- I don't

8    have --

9            THE COURT:  Just talk into the microphone,

10   otherwise they can't hear you.

11           MR. BODE:  Sorry.

12           I don't have the advantage of the minutes that

13   counsel cited of the prior proceedings, which I don't

14   believe were included in any of the papers.  But I can say

15   to the best of my recollection; the Court has consistently

16   asked the government to look into the matter to see about,

17   and urged -- I'll even go so far as to say urged the

18   government to release the statements to, which aren't

19   actually prior Grand Jury testimony in the federal case,

20   they're prior Grand Jury testimony of Sippy Punn before

21   the state, and affidavits by both Sippy and Jesse Punn in

22   the state.

23           THE COURT:  This is Grand Jury testimony or

24   sworn depositions.

25           MR. BODE:  It's Grand Jury testimony by Sippy

10

1    Punn in the state.

2              THE COURT:  All right.

3              MR. LEVINE:  I believe there are also -- I'm

4    sorry, this is Arnold Levine.  I think there were also

5    statements made, perhaps under oath.

6              MR. BODE:  That's correct.

7              MR. LEVINE:  Or Nassau County district --

8              MR. BODE:  That is correct.

9              And what I told what I have indicated, I believe

10   I have indicated to the Court and I don't have the

11   minutes.  But as I have indicated to Mr. Levine, I wanted

12   to look at the law regarding those prior statements before

13   I turn those things over.  In looking at the law I found

14   what appears to be well-settled that a witness is not

15   entitled to a copy of Grand Jury testimony.

16             And specifically I'll hand up the case to the

17   Court.  It's United States -- well, I take that back.  In

18   Re:  Grand Jury subpoena John Doe.

19             It's found at 72 F.3d 271.  I'll hand it up to

20   the Court.  And in it the Second Circuit deals squarely

21   with this question, you know, finding the witness is not

22   entitled to that.  It also deals with whether the witness

23   can take notes in the prior Grand Jury.  That's not an

24   issue here.

25             But what is interesting is that the Second

1    Circuit cites a dissent by Justice Brennan in a Supreme

2    Court case.  And that specifically is on page 5 of the

3    Second Circuit's opinion.

4         And what Justice Brennan noted, and which is

5    quoted by the Second Circuit, is; the reason for not

6    providing a witness with the prior Grand Jury testimony is

7    because that access can expose that witness to potential

8    intimidation.  And making it possible for those with power

9    over the witness to monitor his or her testimony.

10        And then the Second Circuit also cited another

11   case there towards the bottom of page 5 where they

12   noted -- it's In Re:  Bottari, 453 F.2d 372, where they

13   quoted part of Bottari, which is:  *It would be naive on*

14   *the part of the Court to think that appellant seeks these*

15   *answers for his own protection as distinguished from*

16   *attempted discovery by other persons interested in the*

17   *Grand Jury proceedings.*

18        And in evaluating this case, especially as to

19   these two young witnesses, adults but young witnesses, who

20   previously indicated at the time of the state Grand Jury

21   proceedings that they weren't literally afraid their

22   father would kill them when he found out that they were

23   the ones who turned him in.

24        And let me say I have other indications of

25   intimidation as well that the government is investigating.

**12**

1    I'll say, I think I have said it on a prior occasion, that

2    is one of the focuses of the government's superseding

3    Grand Jury investigations, intimidation, witness

4    intimidation.  Under those circumstances we feel it's not

5    appropriate to, and there is clearly no right under the

6    case law, for the witnesses to have their prior Grand Jury

7    testimony even though it's not federal Grand Jury, their

8    prior statements.  For our purposes it's just a statement

9    because it's from another proceedings, something that we

10   obtained.

11         But because we want to -- and the reason why the

12   witness intimidation purposes, that having those priors

13   statements is problematic, is that witnesses can be,

14   basically have to provide their testimony to the person

15   who is intimidating them.  The person who is intimidating

16   them can check over that testimony and say, *Well what did*

17   *they say?*  You know, *What did they say about me?*  And it

18   creates an issue of intimidation.  And that's why I did

19   not want to give over these statements.

20         And Mr. Levine for his part, although he is an

21   independent lawyer for the two witnesses here, I believe

22   frankly he was on the list of attorneys that was provided

23   by Doctor Punn's counsel that they picked from.  And he

24   has indicated he is not interested in bringing the

25   children in to speak with the government.  So I can't

1    speak with them.  He has also, in my view asserted what

2    is, although we went and obtained immunity it's a spurious

3    immunity claim, the claim that the two children faced a

4    possibility of a prosecution for possessing the child

5    pornography for the period of time before they turned it

6    over to authorities.

7            I frankly view that as a spurious claim of

8    immunity, just as a way to delay, and it has had the

9    effect of delaying this for two months.  And especially

10   where those witnesses previously testified to those facts.

11   Those statements could be used if there were such, going

12   to be such a prosecution.  And there clearly isn't.  We're

13   grateful that they came forward and exposed what their

14   father had done.  So that's in a nutshell my answer

15   regarding that issue, your Honor.

16           What I am asking the Court to do today, is, and

17   it seems as if the Court is so inclined, and I would just

18   urge the Court to do so, is to deny both the motion to

19   reconsider and to the extent that it is a new motion to

20   quash by the attorney for the two witnesses, to deny those

21   today.  I would ask your Honor to inquire of Mr. Bachrach

22   particularly, and Mr. Levine as well, if they do intend to

23   appeal to the circuit.  Never mind the fact that the

24   government waives and the Court believes it is not

25   appealable, obviously they can try.  Because if that's the

**14**

1   case, what I'm going to ask the Court to do is to decide

2   these motions today so THAT we can get that interlocutory

3   appeal moving; that they be directed to do that within a

4   week so that we can keep this moving.

5          And if, if a stay is appropriate -- I don't

6   assert that it is -- but that we just do a one week stay

7   and we get this, and we direct them to file the appeal and

8   we get this moving.  That is my request, your Honor.

9   Because the immunity took awhile because we had to, we

10  have to go through three or four lawyers of review in my

11  office, and it has go down to the Department of Justice,

12  and it has to go to a District Court judge here.

13         So the Grand Jury process has been frustrated by

14  a couple of months here, at least in terms of these

15  witnesses, not as to other matters.  But that is my goal.

16  Is to get this moving.  Thank you.

17         THE COURT:  Thank you.

18         MS. MACEDONIO:  Your Honor, this is Elizabeth

19  Macedonio.

20         THE COURT:  I only need the first person

21  talking, because I don't need two lawyers on the same

22  representation here.

23         MS. MACEDONIO:  I just wanted to respond to

24  Mr. Bode's comments with respect to --

25         THE COURT:  So you're handling the motion to

1    quash, or the reconsideration of that denial?

2              MS. MACEDONIO:  Mr. Bachrach is going to be

3    handling that.

4              THE COURT:  So why don't you let Mr. Bachrach

5    respond.

6              MR. BACHRACH:  Thank you, your Honor, a couple

7    of points.

8              First, I just want to direct to your Honor's

9    initial comment that you believe that the defendant has no

10   standing to file an interlocutory appeal under the

11   collateral order doctrine.  The Second Circuit has stated

12   In Re:  Grand Jury Proceedings, I believe it's at 623 F.2d

13   at 124.

14             THE COURT:  F.2d at 124?

15             MR. BACHRACH:  Specifically, that to file a

16   motion to intervene as a right is an appealable final

17   order under 28 USC Section 1291.

18             THE COURT:  Mr. Bachrach, are you on a speaker

19   phone?

20             MR. BACHRACH:  I am not, your Honor.

21             THE COURT:  The court reporter says there is an

22   echo and it makes it difficult to understand.

23             MR. BACHRACH:  Is this a little bit better, your

24   Honor?

25             THE COURT:  Slightly.  All right, please

1   continue.

2           MR. BACHRACH:  I apologize, your Honor.  This

3   isn't my phone.  I don't know why it is causing an echo.

4           THE COURT:  Is it a cell phone?

5           MR. BACHRACH:  No, it is a desk phone.  I think

6   this is an office phone.

7           But what I was stating is that In Re:  Grand

8   Jury Proceedings, that is in 1980 the Second Circuit

9   specifically held that a denial of a motion to intervene

10  is in fact an appealable final order under 28 USC 1291.

11  The Court went on to conclude also that where a subpoena

12  is directed against a third party, and the movant, in this

13  case the defendant, claims that compliance with the third

14  party subpoena would violate his constitutional interests.

15          THE COURT:  The court reporter indicates she

16  can't understand you.

17          MS. MACEDONIO:  Can the court reporter hear me?

18          THE COURT:  Yes.

19          MS. MACEDONIO:  Maybe it's just a bad line.

20          Can we try a speaker and see if it doesn't work

21  better?

22          THE COURT:  Sure.

23          MR. BACHRACH:  Let me try again, your Honor.

24  I'm not sure which part of the comment you heard or not,

25  but if I'm being repetitive --

1          THE COURT:  Why don't you start over.  You were

2     telling me about In Re:  Grand Jury 623 Fed.2d, I believe

3     it was 124, that the denial of a motion to intervene is

4     appealable.  And then you went on to start your argument

5     with the third party issues, constitutional impact on a

6     person who is seeking to intervene.

7          MR. BACHRACH:  Correct, your Honor.

8          And at 623 F.2d at 124, it is the same case.

9     And in that the Second Circuit explains that where a

10    subpoena is directed against a third party, the movant,

11    who in this case would be Doctor Punn, who claims that

12    compliance with the subpoena would violate a

13    constitutional interest, that movant would also be

14    permitted an immediate appeal.

15         So based upon that 1980 Second Circuit case,

16    which itself is a Second Circuit interlocutory appeal, I

17    do believe that we do have a right to appeal under the

18    Collateral Order Doctrine.  This would be one of the

19    exceptions.  But I do make that proposition that we do

20    have standing.  It is actually that denial of standing

21    that is one of the two things that gives us a right to an

22    immediate appeal.

23         The Second Circuit might disagree.  They might

24    agree with you on the merits, but they might disagree.

25    And that is why I think that is an issue that we can

18

1     appeal immediately.

2          THE COURT:  But it doesn't make a difference,

3     sir, because in essence what I'm saying is whether you

4     have standing or not, the denial of a motion to quash is

5     not an exception under the Collateral Order Doctrine.  So

6     you're not entitled to an immediate appeal.

7          MR. BACHRACH:  What I'm arguing, your Honor, is

8     that under this case, specifically under this case a

9     denial of a motion to quash is appealable, is immediately

10    appealable under 28 USC 1291.  That's the argument.  And

11    that's the basis that I would raise in the Second Circuit

12    for my standing to appeal.  Both as a denial of, denial of

13    the right to intervene, as well as the denial of the

14    motion to quash.

15         And in the reasoning of this courts have held

16    that there is this immediate appealability.  It's because,

17    One, either documents are turned over promptly, or in this

18    case once the witnesses testify, the proverbial cat will

19    be out of the bag.  And that is something that can not be

20    repaired by waiting to the end of trial to appeal.

21         So any time you have an instance where you can

22    not repair the error after trial because it would be too

23    late, that's when an earlier appeal is permitted.  And

24    again, under this specific case that I do believe we do in

25    fact have the ability to appeal immediately.  And that

**19**

1    being the case, I think that a stay would be warranted.

2            I still say one thing, though, your Honor.  I do

3    agree with Mr. Bode on something, and that is that I do

4    think that the appeal could be handled fairly quickly.  I

5    don't know that we could get it in in a week, as Mr. Bode

6    has suggested.  But it often takes a week just to get a

7    docket number from the Second Circuit.  But I do think the

8    appeal could be handled on an expedited basis.  And we

9    wouldn't oppose if the government moved in the Second

10   Circuit to proceed on an expedited basis.  We wouldn't

11   oppose that motion.

12           Our concern here more than anything is that the

13   Grand Jury process is not abused and it is not going

14   forward prior to the appeal being decided.  That we are

15   seeking a stay.  But we are perfectly happy to go forward

16   with the rest of this case with an adjudication of the

17   other pending motions.

18           And as your Honor knows, our whole argument that

19   an abuse of the Grand Jury proceeding is taking place is

20   all predicated on the belief that the government is just

21   trying to interview the witnesses before the motions can

22   be fully litigated.  Obviously if the motions were fully

23   litigated it would eliminate our appeal.

24           THE COURT:  Mr. Bode, would you like to respond

25   to that?

1          MR. BODE:  Judge, in Mr. Bachrach's -- I'm sorry

2    if I mispronounce it -- in his motion he talks on page 2

3    in terms of the, the supposed right here, which would be a

4    new constitutional right from any point of view, I would

5    submit.  And he cites no cases.  And it's the middle of

6    page 2.  The disruption of the family through efforts to

7    pit family members against family members in a criminal

8    proceeding.

9          There is no case cited because there is no such

10   right.  But in any event, I would note that this was a

11   case that began when family members came forward to report

12   what was an egregious criminal conduct.  This isn't

13   something where the government is splunking (sic) about

14   trying to cause trouble between family members.  This is

15   -- the case is what it is, and it came in that way prior

16   to our involvement.

17          In terms of the appellate rights.  I agree with

18   Mr. Bachrach just to the extent that he obviously can make

19   the motion, the appeal with the circuit.  And I submit

20   that there is no standing.

21          I think we can do this on a very expedited

22   basis.  I mean bail appeals are handled within, you know,

23   a matter of days.  I don't know why this -- and Grand Jury

24   matters I think are given precedence in the Circuit, I

25   would assume, and especially if your Honor orders the

1   defense to file by a date certain.  And we, you know, we

2   would agree that we would move that it be heard on an

3   expedited basis so we can get the Grand Jury process

4   moving.

5           THE COURT:  So Mr. Bode, you're consenting to,

6   for whatever it's worth, the appeal going forward?

7           MR. BODE:  I had a debate with, I spoke with my

8   deputy chief of appeals, your Honor, an hour or two ago.

9   He indicated, you know, if the defense basically -- if

10  your Honor were -- I said, Should I ask that the Court,

11  you know, order the witnesses to come in tomorrow, or

12  should I ask for a week, you know, agree to a week stay?

13          And he indicated, you know, it wasn't a sure

14  thing that they would get any sort of stay from the

15  Circuit.  He thinks that this is a particularly weak

16  appeal in terms of the defense.

17          But if -- we would be answering this into the

18  wee hours of tonight.  And I have to tell the jurors at

19  six o'clock, you know, what to expect regarding tomorrow.

20          So given all of that, your Honor, I'll agree to

21  a one week, a one week stay.  I want to keep this moving.

22  I want to keep this tight.  And I would ask you to direct

23  that they file their appeal by Monday so that we can --

24  and then we can try to get this moving.  And I'll talk

25  with my, you know, we'll talk with the motion clerk and

22

1    see how quickly we can get it resolved.

2            But if we stay it for a week, and if it's not

3    possible to deal with it sooner, then, you know, then in

4    two weeks we'll come back to the Court.  But at least it

5    keeps it tight.  It keeps this case moving.

6            THE COURT:  Mr. Bachrach, if the government is

7    willing to consent to a one week stay leading to a two

8    week stay, essentially.

9            MR. BODE:  Maybe.

10           THE COURT:  Providing you an opportunity to get

11   going on this, then I certainly am not going to stop that

12   process.

13           But the Court's ruling is; one, you don't have

14   standing; two, there is no constitutional interest on

15   behalf of your client; and three, the Court does not see

16   this as making an exception to the Collateral Order

17   Doctrine.

18           But I'll put it over for two weeks for you to

19   seek a stay.  And I will stay the Grand Jury and the

20   witnesses so Mr. Levine will not have to come in.

21           As far as any additional motions to reconsider,

22   I think you have made your arguments.  I have made my

23   rulings.  And Mr. Levine, I think it is clear that your

24   clients have gotten immunity.  You will not be seeing the

25   immunity orders per se.  And unless you have some special

1   Supreme Court case that says they're entitled to their

2   prior statements, based on case law that Mr. Bode has

3   submitted to the Court I am denying your motion for the

4   reasons previously stated.

5           MR. LEVINE:  Well, your Honor, can I just, after

6   Mr. Bode spoke regarding the statements, we sort of talked

7   about a lot of other things, really --

8           THE COURT:  Sure.  What would you like to say

9   about the statements?

10          MR. LEVINE:  First, that what I was told by

11  Mr. Bode at the meeting that I had with him; it is not

12  that he had the law, but that he had agreements that he

13  had with Nassau County about whether there was anything

14  prohibiting, and whether it was under an agreement with

15  Nassau County from disclosing statements from Nassau

16  County.  And I haven't heard yet that there is anything in

17  an agreement with Nassau County that it would be violated

18  if he gave me the statements.

19          THE COURT:  But now you're talking about

20  something other than the law.  I'm hearing arguments on

21  the law right now.

22          MR. LEVINE:  Right.  The law that he cited said

23  there is not an entitlement.  It doesn't say that he is

24  not allowed to give it, or that you don't have discretion

25  to order him to give it to me.  In fact your Honor had

1   said ON May 9th during the hearing on May 9th, quoting on

2   page 20:  *I expect that they would receive those*

3   *statements because they were probably made four years ago,*

4   *if I had to guess.*

5          And then on July 13th -- I'm sorry, May 13th --

6   at the other hearing, it came up again.  And I believe

7   Mr. Zissou was -- let me make sure -- yes, Mr. Zissou was

8   speaking.  And you said:  *I will give him more time to*

9   *respond if that is what he needs -- the suppression*

10  *motion. But you should understand our motion is devoted in*

11  *large part to what the Nassau County investigators claim*

12  *the Punn children told him at the time the warrant was*

13  *issued.*

14         And your Honor said, quote:  *That is why I told*

15  *Mr. Bode to make sure they got the DE 5s, whatever they*

16  *were, the statements of the children to the adult*

17  *children's counsel that is still continuing.*

18         So your Honor has already ordered that they turn

19  statements over.  He acknowledged that these statements

20  were given at least three years ago regarding events that

21  happened three years before that.  My clients are young,

22  three years, six years is a good portion of their lives.

23  And I think that to just put them in the Grand Jury at

24  this point saying like; one, I think it is going to lead

25  to them saying in the Grand Jury, saying, I don't recall.

1  Can I see my clients' statement to refresh my

2  recollection?

3          And things as opposed to -- up front --

4  whether they refresh their recollections -- there is no

5  intimidation, they're represented by counsel now.  It may

6  have occurred in Nassau when they weren't represented.  It

7  may have occurred before they were represented here.  But

8  they're represented, and I represent them.  They're not

9  going to be intimidated.

10          Their father is in prison.  As far as I know

11  their father has no supporters except for his lawyers in

12  that regard.  As far as I know there is no family getting

13  along with the children who are trying to intimidate them.

14  They have not seemed to be intimidated at all by anybody

15  on the defendant's side.  So I don't see any danger of

16  intimidation here.  I see that your Honor has already

17  ordered that they get to see their statements knowing --

18  there is no harm in them seeing their statements only to

19  the extent that --

20          THE COURT:  Well first of all, I may have been

21  wrong in ordering the statements.  Mr. Bode has presented

22  some case law to, contrary to my understanding.

23          And let me just ask you, Mr. Levine.  On this

24  issue of intimidation, how were you retained or how did

25  you come to be retained by the Punn adult children?

1            MR. LEVINE:  I think they were given my name by

2      Ms. Macedonio and Mr. Zissou.  They came in separately to

3      see me.  They did not -- nobody from Mr. Punn's team was,

4      the defense team was present.

5            Obviously nobody from Mr. Punn's family was

6      present.  They came to my office, spoke to me freely.  I

7      sent them a letter, a letter of engagement.  They both

8      signed it and gave it back to me.  And I told them many

9      times that despite how they got my name originally, I

10     represent them and their interests alone.

11           And if they tell me, however they tell me to act

12     is how I'm going to act.  If they want me to act in some

13     way to try to help their father, that is their call.  If

14     they don't, then that is their call.  I'll do whatever it

15     is that they want to do in terms of testifying in the

16     Grand Jury and making motions.

17           In fact, one reason that the motion was filed as

18     late as it was last night, is that I actually finished it

19     a couple of hours before I emailed it out, was because I

20     was having a conference call with my clients last night

21     that was scheduled for 8:30.  And I wanted to speak with

22     them and explain what was happening, and to make sure they

23     still wanted, that they wanted me to file that motion.

24           So I don't see that being intimidated by anybody

25     basically at all.

1          THE COURT:  So your remaining argument now is

2     that you want copies of the materials before your clients

3     go in to testify, if they're being required to testify.

4          MR. LEVINE:  Yes.

5          THE COURT:  Okay.

6          MR. BODE:  Judge, I'm at a disadvantage as to

7     the minutes, because presumably Mr. Levine was provided

8     these minutes by Doctor Punn's counsels.  They didn't

9     attach them to the motions, so I don't have them.

10          So, my recollection is, like the Court, after

11     the Court indicated what it indicated, I said I would look

12     into it.  I Know I didn't commit because I hadn't had a

13     chance to look at the law yet.

14          THE COURT:  But you generally have my orders,

15     *But I'll look into it, judge.*

16          And then I follow up with, *turn over the*

17     *materials.*

18          Apparently you looked into it and you maintain

19     that it's not, should not be turned over to the witnesses.

20     That is the government's position.  I will review the case

21     law.  And Mr. Levine, you can send in any case law that

22     you think contradicts what Mr. Bodes has said.

23          But right now I don't see any basis to find that

24     you have standing or the other grounds on which you have

25     moved for relief here.  I don't think you have any

1  appealable rights.

2         But the testimony of your clients before the

3  Grand Jury is stayed for two weeks.  And I expect then in

4  the interim the appeal will be immediately processed in

5  order to avail the appeal.  Just one minute.

6         MR. LEVINE:  Judge, just -- I doubt that I'll be

7  appealing on behalf of the Punn children.  But I do think

8  that doesn't affect Mr. Bachrach's arguments regarding

9  Doctor Punn's right to appeal, and further stay which is

10  still in effect.  Because if Doctor Punn wins the Grand

11  Jury is an abuse of process, then my clients would not

12  testify in the Grand Jury presumably at that point.

13         THE COURT:  We'll see if that happens, sir.  But

14  for purposes of this application, Ms. Macedonio and

15  Mr. Bachrach, you're waiving the appearance of your

16  client?

17         MS. MACEDONIO:  Yes, your Honor.

18         THE COURT:  Okay.  So two weeks, get the appeal

19  in, get it processed.  If you have to go down personally

20  to the Second Circuit to get it done, get it done quickly.

21  And I will look to the other motions that are pending

22  before the Court and render decisions on those, hopefully.

23         MR. BACHRACH:  Your Honor, before conclude.

24  This is Mr. Bachrach.

25         Just, I think it is clear, but just so there is

1    no question on appeal -- Did your Honor affirmatively

2    state that you are in fact denying the motion for

3    reconsideration.

4            THE COURT:  Absolutely denying the motion for

5    reconsideration.

6            MR. BACHRACH:  Thank you, your Honor.

7            THE COURT:  Okay.  And that is based primarily

8    on really the lack of substantive grounds on the

9    underlying motion to quash the subpoena.

10           MR. BACHRACH:  I understand.  I just wanted the

11   record clear.  I appreciate it, your  Honor

12           THE COURT:  Okay, anything else?

13           MR. BODE:  Just two housekeeping matters, your

14   Honor.

15           I'll say to Mr. Levine, I'll move the proceeding

16   to August 1st at 11:00 am.  Unless you want me to issue a

17   subpoena I presume that you will accept that as the new

18   date?

19           MR. LEVINE:  Yes.

20           MR. BODE:  And then while we have Ms. Macedonio

21   and Mr. Bachrach on the phone, your Honor; do you want to

22   schedule a status, maybe in a few weeks on the substantive

23   case or not?

24           THE COURT:  Yes.  I still have the motions for

25   suppression and so on.

30

1          MR. BODE:  So we'll await your Honor's decision

2    and then we'll schedule a status in Punn's case.

3          THE COURT:  Yes.

4          MS. MACEDONIO:  Your Honor, given the expedite

5    nature of the appeal, can we ask who the Court report

6    tears so he would can't get the minutes.

7          THE COURT:  I'm sorry, I didn't catch that last

8    part.

9          MS. MACEDONIO:  Can we have the name of the

10   Court reporter so we can get the minutes?

11         THE COURT:  Ellen.

12         MS. MACEDONIO:  Thank you, Ellen.

13         THE COURT:  Thank you, good-bye.

14         This is the end of the proceeding.

15         (The proceedings were concluded at 3:47 p.m.)

16

17

18

19

20

21

22

23

24

25